**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| OMAR ABDI, ) | No. CV-08-0321-PHX-GMS |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| CHANCE LOVELL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is the Motion for Partial Summary Judgment of Defendant Chance Lovell. (Dkt. # 55.) For the reasons set forth below, the Court denies Defendant's motion.

**BACKGROUND**

Plaintiff Omar Abdi is an Arizona resident and a Somalian refugee and is employed as a taxi driver. Defendant Chance Lovell is an Arizona resident and, at all relevant times, was employed as a law enforcement officer by the City of Scottsdale. On the evening of April 10, 2007, Lovell, while off-duty, was drinking alcohol at two different bars in Tempe, Arizona. Abdi was working that evening and was parked near Mill and Fifth Avenue in Tempe, waiting for potential customers. Sometime after midnight, Lovell entered Abdi's cab while talking on a cell phone and gestured to Abdi to drive north. After completing the call, Lovell began conversing with Abdi. Upon learning that Abdi was from Somalia, Lovell became very upset, saying, "[t]hey killed my brother." (Dkt. # 58 Ex. 1 at 109.) Lovell

1 began to use racial epithets and profane insults. Lovell also refused to clarify the vague 2 destination directions initially given to Abdi. When Abdi asked for a specific address, Lovell 3 punched him in the arm and told him to keep going. He also grabbed the back of Abdi's seat 4 and shook it.

5 Abdi testified that as he drove, Lovell continued to use abusive language, saying 6 things like "you're [a] slave, you're not supposed to come here. You're supposed to have 7 a chain on your leg." (Dkt. # 56 Ex. A at 116.) Abdi decided he didn't want to continue with 8 Lovell in the car and headed toward a gas station to drop him off. In response, Lovell 9 attempted to take control of the steering wheel from the backseat. Abdi testified that Lovell 10 then announced that he was a police officer, saying, "I will arrest you tonight. I know 11 somebody I can call, and they will take you to jail." (*Id.* at 110.) Lovell continued to berate 12 Abdi, saying, "My great-grandfather used to have 72 slaves. You shouldn't be a free man. 13 You should take care of my shoes, and you know, my carpets . . . . You should have a chain 14 on your legs. How come these people are free . . ." (*Id.* at 111.)

15 Seeing a gas station at the corner, Abdi pulled the cab into the parking lot. Upon 16 removing the keys and getting out of the car, Abdi told Lovell that he didn't want to take him 17 any further, but that he would call another cab for him. After exiting the vehicle himself, 18 Lovell again identified himself as a police officer, both verbally and by showing his badge. 19 He reiterated that he was going to arrest Abdi. Abdi testified that Lovell said, "This is a 20 police officer. Turn around. I will arrest you right now. Turn around." (*Id.*) Abdi protested, 21 saying, "[y]ou cannot arrest me. You can, you know, take another taxi. I cannot take you." 22 (*Id.* at 112.) Lovell continued to curse, and then approached Abdi and struck him with rapid 23 punches, one from each fist, in the chest and abdomen. An unidentified bystander warned 24 Abdi not to retaliate. Abdi testified, "[a]nd the guy was standing there. He said, don't fight 25 back. He's a police officer. He showed you his badge. If you touch him, they will, you 26 know, make a case on you. Don't. Don't touch him, but call [the] police."(Dkt. # 58 Ex. A 27 at 12-13.) Without retaliating, Abdi called the police.

28

Upon his arrival, Tempe police officer B. Breckow "observed a white male yelling at a black male in the parking lot," with his hand raised. (Dkt. # 58 Ex. 3 at 5.) The white male, identified as Lovell, was arrested for misdemeanor assault.[1] Abdi declined an ambulance, instead driving himself to a local clinic for treatment. Abdi was also referred by counsel to Dr. Michael Bayless for psychological treatment. Dr. Bayless's notes include Abdi's symptomatic complaints as well as conclusions about Abdi's mental health after the incident.

> Mr. Abdi reported that when a Caucasian male gets into his cab, he gets very anxious, begins to sweat, and at times his vision becomes blurred. He tends to overreact in traffic and is consumed by thoughts of being attacked . . . . Whenever Mr. Abdi sees a police officer he becomes very nervous. At times he gets severe headaches . . . . Mr. Abdi's experience with the police officer was and continues to be very disturbing . . . .

(Dkt. # 58, Ex. 2, at 9.) Dr. Bayless subsequently wrote in his evaluation report that Abdi's "symptom picture suggests he is experiencing Posttraumatic Stress Disorder Adjustment with Anxiety and Depression." (*Id.*)

On January 31, 2008, Abdi filed his complaint in Maricopa County Superior Court, alleging that Lovell violated his civil rights under 42 U.S.C. § 1983, and also alleging additional state law claims of negligence, assault, and intentional infliction of emotional distress ("IIED").[2] The case was removed to this Court on February 20, 2008. (Dkt. # 1 at 2.) On December 2, 2008, Lovell filed his Motion for Partial Summary Judgment under Federal Rule of Civil Procedure 56, seeking summary judgment on Abdi's § 1983, IIED, and negligence claims.

---

[1] Arizona Revised Statutes section 13-1203(A) defines assault as: "1. Intentionally, knowingly or recklessly causing any physical injury to another person; or 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or 3. Knowingly touching another person with the intent to injure, insult or provoke such person."

[2] The City of Scottsdale was also a named defendant in the original complaint, but has since been dismissed from this action by stipulation. (Dkt. # 49 at 6.)

- 3 -

**JURISDICTION**

The Court has federal question jurisdiction over Abdi's § 1983 claim. *See* 28 U.S.C. §§ 1331, 1343. The Court has supplemental jurisdiction over Abdi's related state law claims. *See* 28 U.S.C. § 1367.

**DISCUSSION**

**I.     Summary Judgment Standard of Review**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, establishes that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law determines the materiality of facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes pertinent to the outcome of the suit require denial of motions for summary judgment when the disputed evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

/ / /
/ / /
/ / /
/ / /
/ / /

## II. Analysis

### A. 42 U.S.C. § 1983 Claim

Section 1983 provides a cause of action against a person who, acting under color of state law, deprives another person of rights guaranteed under the Constitution.[3] It is a vehicle to challenge such actions. To prove a case under § 1983, plaintiffs must demonstrate that: (1) the action occurred under color of state law, and (2) the action resulted in the deprivation of a constitutional or federal statutory right. *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000) (citations omitted). The parties do not dispute the deprivation of an applicable federal right, but instead argue whether Lovell's actions occurred under color of state law.

Both parties focus on the Ninth Circuit's opinion in *Anderson v. Warner*, 451 F.3d 1063 (9th Cir. 2006). (Dkt. # 57 at 1, 6-7; Dkt. # 59 at 1-2.) In *Anderson*, the Ninth Circuit stated that there was "no 'rigid formula'" for deciding whether a state or local official was acting under color of state law, since the determination is fact-specific. 451 F.3d at 1067 (quoting *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 550 (9th Cir. 1974)). The defendant in *Anderson* was an off-duty sheriff's department officer whose vehicle was hit by another driver. *Id.* at 1065. After the accident, the off-duty officer got out of his vehicle, warned bystanders to stay away by announcing he was a "cop," and then assaulted the other driver. *Id.* The court held that the off-duty officer "was acting under color of state law when he invoked his law enforcement status to keep bystanders from interfering with his assault on [the plaintiff]." *Id.* at 1069.

In arriving at this conclusion, the Ninth Circuit noted, "[i]n the circumstances of this case, there are three critical requirements that must be satisfied." *Id.* First, the officer must have been acting or pretending to act in the performance of his official duties; second, the

---

[3] 42 U.S.C. § 1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proceeding for redress . . . ."

1 officer's actions must have had the purpose and effect of influencing the behavior of others; 2 and third, the conduct must have been either meaningfully related to official duties or the 3 official must have used his "badge of authority" to deprive individual rights. *Id.* at 4 1067(quoting *McDade*, 223 F.3d at 1139).

### 1. Acting or Pretending to Act

6 Lovell argues that during the evening in question, he was merely acting as a private 7 citizen and not as a law enforcement officer. (Dkt. # 58 at 11.) He points out that he "was 8 not on duty, not wearing his uniform, not carrying a weapon and was engaged in purely 9 personal conduct." (Dkt. # 55 at 10-11.) Abdi, however, alleges that Lovell repeatedly 10 identified himself as a police officer, both verbally and by showing his badge. He also 11 contends that Lovell attempted to put him under arrest several times, including by ordering 12 him to turn around at the gas station and by telling him that he was under arrest. (Dkt. # 58 13 at 8.)

14 A police officer or other state actor performing official acts, even if illegal or 15 unauthorized by state law, is operating under color of state law. *West v. Atkins*, 487 U.S. 42, 16 48 (1988); *see, e.g.*, *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (holding that an 17 officer announcing himself as an officer and using a service pistol was acting under color of 18 state law); *cf. Barna v. City of Perth Amboy*, 42 F.3d 809, 818 (3d Cir. 1994) (holding that 19 using a police nightstick in an altercation was not an action under the color of state law when 20 an off-duty officer did not invoke police authority or make an arrest). A police officer 21 pursuing his own interests not related to his official duties is generally not acting under color 22 of state law. *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998). Even 23 when pursuing personal goals, however, an off-duty officer pretending or purporting to use 24 official authority is acting under color of state law. *Id.*; *see also Screws v. United States*, 325 25 U.S. 91, 111 (1945) ("It is clear that under 'color' of law means under 'pretense' of law."). 26 Examples of purporting to invoke official authority include "flashing a badge, identifying 27 oneself as a police officer, placing an individual under arrest, or intervening in a dispute . . . ." 28 *Barna*, 42 F.3d at 818.

- 6 -

It is uncontroverted that Lovell identified himself as a police officer several times, both verbally and by showing his badge. He also threatened to place Abdi under arrest more than once. Although Lovell was not wearing a uniform, he did identify himself as a police officer and attempted to use this badge of authority with Abdi. Therefore, based on the undisputed facts, Lovell did act or pretend to act in the performance of his official duties.

### 2.    **Purpose and Effect of Influencing Behavior**

Lovell argues that if Abdi did not believe that Lovell could arrest him, there are no genuine issues of material fact because Lovell could not have invoked the "real or apparent power of his position as a police officer." (Dkt. # 55 at 12.) However, it is the defendant's objective behavior that determines whether an action occurred under color of state law, not the victim's subjective belief. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 839 (9th Cir. 1996) (holding that an officer was not acting under color of state law since "[a]t no point did [defendant] purport to be acting as a policeman" so that the victim's decision to open the door was not based on his status as an officer); *see also Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) ("[D]eciding whether a police officer acted under color of state law should turn largely on the nature of the specific acts being performed . . . ."); *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) ("Thus, whether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties."). Thus, Lovell's argument relying on what Abdi believed or didn't believe must fail because a plaintiff's subjective belief is not dispositive of the issue. Rather, it is Lovell's objective behavior that determines whether he was acting under color of state law.

Additionally, Lovell contends that there is no evidence that his actions affected Abdi or bystanders. However, based on the undisputed facts in the record, a reasonable jury could find that Lovell's objective actions had the purpose and effect of influencing behavior. Abdi testified that Lovell told him he was a police officer and that he was going to arrest him. (Dkt. # 58 Ex. 1 at 110.) As Lovell exited the cab, he showed his badge and ordered Abdi to turn around because he was going to be arrested. (*Id.* at 111.) After Lovell punched Abdi, a

- 7 -

1 bystander warned him not to retaliate and Abdi did not. Abdi testified, "[a]nd the guy was 2 standing there. He said, don't fight back. He's a police officer. He showed you his badge. 3 If you touch him, they will, you know, make a case on you. Don't. Don't touch him, but call 4 the police." (*Id.* at 112-13.) From this evidence, a reasonable jury could conclude that 5 Lovell's actions had the purpose and effect of influencing the behavior of Abdi and the 6 eyewitness.

### 3. Using the "Badge of Authority" to Deprive Individual Rights

Lovell argues that "the purported assault was not in furtherance of an arrest." (Dkt. # 55 at 11.) He argues that he was a private citizen and was "not clothed with the authority of state law." (*Id.* at 12.) However, the Ninth Circuit clarified in *Anderson* that the third step of the analysis does not require the action in question to be in furtherance of an official act. "This requirement cannot mean that an officer must have been acting within the scope of his authority in order for him to have been acting under color of state law. If that were true, no § 1983 suit could ever succeed, for the premise of a successful suit is that the officer acted illegally – that is, outside the scope of his authority." *Anderson*, 451 F.3d at 1069; *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.").

Lovell analogizes this case to *Almand v. Dekalb Georgia*, 103 F.3d 1510, 1514 (11th Cir. 1997), asserting that his acts were not accomplished because of the "badge of authority" he possessed as a law enforcement officer. (Dkt. # 55 at 11.) In *Almand*, an off-duty officer went to the female victim's apartment on the pretense of police business concerning the victim's missing daughter. *Almand*, 103 F.3d at 1514. The woman let him enter, but after the defendant made sexual advances, she insisted that he leave. *Id.* He did so, and the door shut completely behind him. *Id.* A moment later, he broke through the door, forcing his way into the apartment and sexually assaulting the woman. *Id.* The Eleventh Circuit held that the

- 8 -

officer was not acting under color of state law when reentering the apartment. *Id.* at 1515. By forcibly breaking into the apartment, the defendant was "no different from any other ruffian." *Id.*

But, while the *Almand* court held that the defendant was not acting under color of law when he burst through the door, the court also observed that the officer was most likely acting under color of state law when he was in the apartment the first time. *Id.* at 1514. To gain the original entry, he had identified himself as a police officer, even though he was off-duty and not in uniform. *Id.* The court reasoned, however, that leaving the apartment ended the officer's initial action under color of state law. *Id.*

In this case, by contrast, Lovell invoked his authority by both verbally identifying himself as a police officer and by flashing his badge. Lovell also threatened or attempted to put Abdi under arrest several times. Unlike *Almand*, where there was a concluding event that interrupted the defendant's action under color of state law, there was no concluding event that terminated Lovell's initial actions. Therefore, the holding in *Almand* is inapposite. A reasonable jury could conclude that Lovell used his badge of authority to deprive Abdi of his individual rights.

Because a reasonable jury could find that all three *Anderson* factors weigh in Abdi's favor and are established by undisputed facts, Lovell's Motion for Summary Judgment on Abdi's § 1983 claim is denied.

**B.   Intentional Infliction of Emotional Distress Claim**

To recover on an IIED claim in Arizona, a plaintiff must prove that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to cause emotional distress or recklessly disregarded the near certainty that distress would result from the conduct; and (3) the conduct caused the plaintiff to suffer severe emotional distress. *See Lucchesi v. Stimmell*, 149 Ariz. 76, 78-79, 716 P.2d 1013, 1015-16 (1986). Lovell argues that Abdi cannot prove either the first or the third elements. (Dkt. # 55 at 6-10.)

**1.   Extreme and Outrageous**

1  Lovell argues that his interaction with Abdi was very brief and mostly entailed
2  inconveniences like profanity and racially insensitive remarks. (*Id.* at 7.) Though he does not
3  contest grabbing the steering wheel, shoving the seat, hitting Abdi in the arm, or punching him
4  in the stomach, Lovell argues that the entire incident "was less than 30 minutes long." (*Id.*)

A plaintiff "may recover for [IIED] only where the defendant's acts are 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) (citation omitted); *see* Restatement (Second) of Torts § 46 cmt. d (1965). Whether an act is sufficiently extreme and outrageous for an IIED claim is a matter of law to be determined initially by the court. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (Ct. App. 1995); *Patton*, 118 Ariz. at 476, 578 P.2d at 155 ("It is the duty of the court as society's conscience to determine whether the acts complained of can be considered sufficiently extreme and outrageous to state a claim for relief."). However, when alleged conduct meets a minimum threshold and reasonable jurors could differ in the result, the question must go to a jury. *Lucchesi*, 149 Ariz. at 79, 716 P.2d at 1016 ("Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.") (quoting Restatement (Second) of Torts § 46 cmt. h (1965)); *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 199, 888 P.2d 1375, 1386 (Ct. App. 1994) ("[T]he trial court must, on the first element, make a preliminary determination whether the conduct may be considered so outrageous and extreme as to permit recovery. That issue may only go to the jury where 'reasonable minds may differ.'") (citation omitted).

There are three factors present in this case that elevate Lovell's conduct to extreme and outrageous behavior. First, Lovell's actions included an unwanted physical touching in addition to other nonphysical conduct. *Johnson v. Pankratz*, 196 Ariz. 621, 624, 2 P.3d 1266, 1269 (Ct. App. 2000) ("Arizona allows damages for mental distress resulting from 'a physical invasion of a person or the person's security.'") (citation omitted). Second, Lovell identified

- 10 -

himself as a police officer, and an abuse of authority – particularly by police officers – is a factor that shows the extreme outrageousness of an act. Restatement (Second) of Torts § 46 cmt. e (1965) ("In particular, police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position."). Third, the insults by Lovell were racial and egregious. *Robinson v. Hewlett-Packard Corp.*, 183 Cal. App. 3d 1108, 1130 (Ct. App. 1986) (["T]he slang epithet "nigger" . . . has become particularly abusive and insulting.") (quoting *Alcorn v. Anborn Eng'g Inc.*, 2 Cal.3d 493, 498 n.4 (1970)). Indeed, racial slurs perpetuated by police officers can, of themselves, be sufficient evidence of extreme and outrageous conduct. *Mejia v. City of New York*, 119 F. Supp. 2d 232, 286 (E.D.N.Y. 2000) (reasoning that ethnically "disparaging remarks" uttered by a police officer may well fall within the Restatement's definition of outrageous conduct, even if the same remarks by a private citizen would not); *see, e.g.*, *Oliver v. Cuttler*, 968 F. Supp. 83, 93 (E.D.N.Y. 1997) (holding that the plaintiff stated an IIED claim where an officer allegedly "hurled racial epithets at him and struck him" without provocation); *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 663 (Minn. 1999) (upholding a jury verdict on an IIED claim in favor of the arrestees where the officers used justifiable force but also used racial epithets and disparaging names). Consequently, summary judgment must be denied. The alleged conduct is sufficient to meet the Court's initial threshold requirement, and it is therefore proper for the matter to be presented to a jury.

### 2. Severe Emotional Distress

Lovell also argues that Abdi has not established any severe emotional distress aside from his own subjective complaints made while visiting Dr. Bayless on referral from his counsel. (Dkt. # 55 at 9.) Lovell also argues that Abdi has failed to seek any other treatment since the initial consultation and has failed to demonstrate that he has suffered severe emotional distress. (*Id.*)

Initially, "[i]t is for the court to determine whether on the evidence severe emotional distress can be found." *Midas Muffler Shop v. Ellison*, 133 Ariz. 194, 197, 650 P.2d 496, 499 (Ct. App. 1982). However, it is for the jury to determine whether severe emotional distress

1 actually exists and whether the defendant caused it. *See Savage v. Boies*, 77 Ariz. 355, 359, 272 P.2d 349, 351 (1954).

Severe emotional distress is evaluated on a case by case basis, and is more than just stress and worry. *Midas*, 133 Ariz. at 199, 650 P.2d at 501 ("A line of demarcation should be drawn between conduct likely to cause mere 'emotional distress' and that causing 'severe emotional distress.'"). Anxiety that results in physical symptoms can constitute severe emotional distress. *Ford v. Revlon*, 153 Ariz. 38, 41, 734 P.2d 580, 583 (1987) (holding that plaintiff's onset of high blood pressure, chest pains, fatigue, and dizziness was sufficient evidence of severe emotional distress); *Pankratz v. Willis*, 155 Ariz. 8, 17, 744 P.2d 1182, 1191 (Ct. App. 1997) (holding that the plaintiff's anger and depression along with physical ailments such as headaches and hemorrhoids resulting from a missing child showed severe emotional distress). This is not to say that physical symptoms are absolutely necessary for a showing of severe emotional harm. The plaintiff's emotional distress must be severe, but no physical injury or "disabling response" is required. *Skousen v. Nidy*, 90 Ariz. 215, 219, 367 P.2d 248, 250 (1961) ("It is the general rule that in actions for personal injuries due to an intentional tort, physical injury need not be sustained. Mental suffering . . . is usually considered an injury for which damages may be given."). General discomfort and stress do not typically meet the Arizona standard for establishing liability. *See, e.g.*, *Midas*, 133 Ariz. at 199, 650 P.2d at 501 (holding that crying and difficulty sleeping does not sufficiently establish IIED); *Spratt v. N. Auto. Corp.*, 958 F. Supp. 456, 461 (D. Ariz. 1996) ("[C]rying, being stressed and upset, and having headaches . . . is not sufficient to submit this claim to a jury."); *Bodett v. Coxcom*, 366 F.3d 736, 747 (9th Cir. 2004) (applying Arizona law and holding that shock, stress, moodiness, and estrangement from friends does not show severe emotional distress).

Abdi testified that he has suffered severe emotional distress by the following: anxiousness, sweating, blurred vision, overreaction in traffic, consuming thoughts, nervousness around police officers, headaches, and difficulty in intimate relations with his wife. (Dkt. # 58 at 11.) While physical symptoms are not absolutely required, Abdi does

- 12 -

1   claim physical manifestations of emotional harm. There is sufficient evidence to establish a
2   genuine issue of material fact here. A reasonable jury could find that severe emotional
3   distress exists, and that it was caused by Lovell's conduct.

4   Because there exists genuine issues of material fact concerning both disputed elements
5   of the IIED claim, summary judgment is inappropriate. The Court therefore denies the
6   Defendant's motion for summary judgment of the IIED claim.

7   **C.     Negligence Claim**

8   The parties dispute whether Lovell owed a duty to Abdi sufficient to permit a
9   negligence claim. Lovell argues that he "undertook no duty toward Abdi, and was under no
10  obligation to use care to avoid or prevent injury to Mr. Abdi," and that Lovell's position as
11  a police officer does not create any duty beyond that of any ordinary citizen. (Dkt. # 55 at 5.)

12  Negligence claims are established by proving the existence of a duty of care, a breach
13  of that duty by the defendant, causality between the defendant's conduct and the resulting
14  injury, and actual damages. *Gipson*, 214 Ariz. at 143, 150 P.3d at 230. For a negligence
15  claim to proceed, the plaintiff must initially establish the existence of a defendant's duty in
16  the pleadings. *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985)
17  ("Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some
18  duty, an action for negligence cannot be maintained."). Duty is defined as an "obligation,
19  recognized by law, which requires the defendant to conform to a particular standard of
20  conduct in order to protect others against unreasonable risks of harm." *Id.*

21  A heightened duty to Abdi predicated upon Lovell's employment as an officer is not
22  necessary for Abdi to sufficiently plead a negligence claim. Abdi's Complaint incorporates
23  all of his factual allegations into each count. Those allegations include acts that sufficiently
24  state the violation of duties that one person owes to another. For example, Lovell's attempt
25  to seize control of the steering wheel from the backseat is a violation of a duty owed by a
26  passenger to a driver. "A duty exists if the relationship of the parties was such that the
27  defendant was under an obligation to use some care to avoid or prevent injury to the plaintiff."
28  *Grafitti-Valenzuela v. City of Phoenix*, 216 Ariz. 454, 457, 167 P.3d 711, 715 (Ct. App. 2007).

- 13 -

Abdi alleges circumstances both sufficient to support the notion that Lovell owed a duty to Abdi and sufficient for a jury to conclude that he breached that duty. Because Lovell's motion for summary judgment on the negligence claim is posited on the premise that, under the circumstances, Lovell owed no duty to Abdi as a matter of law, the motion is denied.

## CONCLUSION

Because there are genuine issues of material fact concerning the § 1983, intentional infliction of emotional distress, and negligence claims, summary judgment is inappropriate.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Summary Judgment (Dkt. # 55) is **DENIED.**

DATED this 9th day of April, 2009.

*/s/ H. Murray Snow*
G. Murray Snow
United States District Judge

- 14 -